UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carlos Fernando Colores
Vasquez,

      Petitioner,

                    MEMORANDUM OPINION
                    AND ORDER
v.                     Civil No. 10-3669

Stephanie Jo Colores,

      Respondent.

_____

      Nicole A.K. Rodd and Nicole M. Moen, Fredrikson & Byron, P.A., Counsel for Petitioner.

      Richelle M. Wahi, Moss & Barnett, P.A., and Valerie A. Downing Arnold Tuft & Arnold Law Offices PLLC, Counsel for Respondent.

_____

## I.    INTRODUCTION

      On May 8, 2010, Respondent, an American citizen, fled her home in Mexico with her then eighteen month old daughter, I.R.C., a Mexican citizen. Petitioner, Respondent's husband, filed a Petition for the return of his daughter, I.R.C., to Mexico pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Convention"), December 23, 1981, 51 Fed. Reg. 10494, as

implemented by the United States in the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq.

Pursuant to ICARA, the Court must order the return of the child if the Petitioner proves by a preponderance of the evidence that his daughter was a habitual resident of Mexico at the time she was removed, and if her removal was wrongful. In this case, the parties agreed that I.R.C. was a habitual resident of Mexico and that her removal was wrongful pursuant to the law of Mexico because Petitioner did not give his consent for I.R.C. to leave Mexico, and because I.R.C. did not have a passport. Return of the child is not appropriate, however, where such return will place the child in grave risk of physical or psychological harm or otherwise place the child in an intolerable situation. ICARA provides, however, that such grave risk must be proved by clear and convincing evidence.

In this case, Respondent alleged that there is a grave risk that I.R.C. would be exposed to physical or psychological harm if returned to Mexico. In support, she alleged that the Petitioner physically and emotionally abused both her and the child. Respondent was given the opportunity to present clear and convincing evidence that Petitioner did abuse her and the child. The Court finds, however,

that Respondent failed to meet this standard. Accordingly, the Court must grant the Petition, and order I.R.C. to return to Mexico.

## II.    PROCEDURAL HISTORY

On August 24, 2010, a Verified Petition for the Return of Child was filed in this District. In the Petition, Petitioner asserted that he and Respondent were married on July 28, 2007, in Minnesota, and that shortly thereafter they moved to Mexico. (Petition ¶¶ 5 and 6.) They have one biological child, I.R.C., who was born in 2008 in Lomas Verdes, Naucalpan de Juarez, State of Mexico, Mexico. (Id. ¶ 7.)

Petitioner asserted that on May 5, 2010, Respondent wrongfully removed I.R.C. from their home in Mexico. Petitioner believed that Respondent and I.R.C. were living with or by Respondent's mother in White Bear Lake, Minnesota. Petitioner asserted that he had not been granted any access to I.R.C. since she was wrongfully taken from her home in Mexico.

Petitioner asserted that I.R.C. is a Mexican citizen, she did not have a passport and Petitioner did not consent to Respondent taking her out of Mexico. (Id. ¶ 19.) Petitioner further asserted that he is a person as defined in 42 U.S.C. § 11602, subd. 5, who has a right of custody of I.R.C. within the meaning of Articles

III and V of the Convention as he is the rightful biological father and was exercising his custodial rights at the time I.R.C. was wrongfully removed.  (Id. ¶ 20-21.)

After he realized that Respondent took his daughter out of the country, Petitioner filed a "Criminal Statement of Facts" with the appropriate authority. (Declaration of Alejandro Suarez, ¶ 6.)  Petitioner also filed a petition with the appropriate Mexico Family Court, asking that court to order the child's return through the assistance of the Mexican Central Authority.  (Id.)  The petition was made pursuant to Articles 2.361-64 of the Code of Civil Procedure of the State of Mexico.  (Id.)

On August 24, 2010, Petitioner filed a motion for ex-parte emergency relief, requesting that custody of I.R.C. be transferred to him during the pendency of his Petition.  Based upon the motion and supporting evidence, the Court found that Petitioner had demonstrated a likelihood of success on the merits of his Petition and that he would suffer irreparable harm if custody was not transferred to him as Respondent represented a flight risk.  The Court ordered that the U.S. Marshal's Service take I.R.C. into protective custody until such time as she could be released to Petitioner.  The Court also ordered Petitioner to not remove I.R.C.

from the United States of America pending further order of this Court and ordered that the parties appear before the Court on September 1, 2010 at 10:00 a.m. for hearing on the Petition.

On August 31, 2010, Respondent filed an opposition to the Petition, claiming that the Article 13(b) exception to return the child applied in this case. In support, Respondent submitted an Affidavit in which Respondent alleged that Petitioner physically and emotionally abused both her and I.R.C.

On September 1, 2010, the parties appeared before this Court to address the merits of the Petition. At that time, Respondent asserted that she objected to the Petition on the basis that returning I.R.C. to Mexico would place her in grave risk of physical or psychological harm. Respondent requested a continuance in order to obtain additional information from the U.S. Embassy in Mexico City that would confirm Respondent's allegations of abuse, and security footage from Respondent's gated community in Mexico as well as collateral evidence to support her allegation that Petitioner was controlling. Petitioner objected to the continuance on the basis that Respondent had failed to demonstrate the additional evidence sought was material to the Petition. The Court agreed and denied the motion for a continuance.

The Court then heard testimony from Respondent, and accepted into evidence documentary evidence consisting of photographs. (Respondent Exs. 1 and 2.) The hearing was then continued to September 7, 2010. On September 2, 2010, this Court, *sua sponte*, ordered that I.R.C. be examined by an independent pediatric neurologist based on Respondent's testimony on September 1, 2010, that Petitioner forcefully shook I.R.C.'s head at least six to ten times per month and head-butted her at least two to three times per month. The pediatric neurologist was ordered to perform any test or scan necessary to determine whether I.R.C. had suffered a brain injury. The Court further ordered that Respondent be allowed up to six hours supervised visitation per day pending further order of the Court.

The evidentiary hearing continued on September 7, 2010. Prior to hearing testimony, Respondent informed the Court that she intended to call Professor Jeffrey L. Edleson as an expert witness to testify as to domestic violence against parents and children in Hague Convention cases. (See Court Exs. 2 and 3.) Respondent asserted that Professor Edleson would testify as to a study he conducted on the topic of domestic abuse in Hague cases. Respondent admitted that the study had not yet been published, nor did Respondent inform the Court

that Professor Edleson had  interviewed I.R.C., or anyone else involved in this case.  Petitioner opposed the admission of any evidence from Professor Edleson.

The Court denied Respondent's motion to admit the testimony of Professor Edleson.  The bases for the Court's ruling is that Respondent did not establish that Professor Edleson's testimony is reliable, as it is undisputed that his study has not been published and subjected to peer review.  In addition, given the fact that Professor Edleson did not interview the parties or I.R.C., Respondent did not establish that Professor Edleson's testimony was relevant to the issue in this case - whether there is a grave risk that returning I.R.C. to Mexico would expose her to physical or psychological harm.  By failing to demonstrate that Professor Edleson's testimony was either reliable or relevant, the Court excluded such testimony pursuant to Federal Rule of Evidence 702.

When the evidentiary hearing resumed, the Court heard testimony from Respondent's mother, Barbara Jo Gangl, and the Petitioner.  After a full day of testimony, the hearing was continued to September 8, 2010.  The Court was informed that an appointment with an independent pediatric neurologist had been scheduled for 5:00 p.m. that evening.  The Court ordered that both the Petitioner and Respondent attend the appointment, and also ordered that an

interpreter be present at such appointment.

On September 8, 2010, the Court received the report from the pediatric
neurologist that examined I.R.C. (Respondent Ex. 3.) After the completion of
testimony, the Court heard final arguments from counsel. The Court further
ordered the parties to submit written final arguments by Friday, September 10,
2010.

## III.    STANDARD

To succeed on his Petition, Petitioner must initially prove by a
preponderance of the evidence that Respondent wrongfully removed their
daughter from her habitual residence. <u>Nunez-Escudero v. Tice-Menley</u>, 58 F.3d
374, 376 (8th Cir. 1995) (citing 42 U.S.C. § 11603(e)(1)).

> The removal or the retention of a child is to be considered wrongful where
> – a) it is in breach of rights of custody attributed to a person, an institution
> or any other body, either jointly or alone, under the law of the State in
> which the child was habitually resident immediately before the removal or
> retention; and b) at the time of removal or retention those rights were
> actually exercised, either jointly or alone, or would have been so exercised
> but for the removal or retention.

Article 3 of the Convention.

Courts should also keep in mind the primary purpose of the Convention:

"to restore the *status quo ante* and to deter parents from crossing international

boundaries in search of a more sympathetic court." <u>Silverman v. Silverman</u>, 338

F.3d 886, 899 (8th Cir. 2003) (en banc). Here, there is no dispute that I.R.C. was

born and raised in Mexico, and had never left Mexico prior to her removal in

May 2010. Under these circumstances, her habitual residence is clearly Mexico.

Respondent does not dispute that I.R.C.'s habitual residence is Mexico.

Respondent also does not dispute that at the time she fled Mexico with I.R.C.,

Petitioner had custody rights over I.R.C. and that he was exercising such rights at

the time of removal.

Pursuant to the law of Mexico, if children of Mexican nationality leave the

country without being accompanied by both parents or guardians, the

presentation of a valid passport will be evidence of parental or guardian

permission for the children to depart. (Declaration of Alejandro Suarez, ¶ 4,

citing Article 215 of the Regulations of the General Population Act.) Here,

Petitioner did not accompany I.R.C. out of the country, nor did I.R.C. have a

valid passport. The Court thus finds that I.R.C. was wrongly removed from

Mexico.

Based on the above, Petitioner has met his initial burden under Article 3 of

the Convention and 42 U.S.C. § 11603(e)(1)). Before the requested relief is

granted, however, Respondent has the opportunity to challenge the Petition by showing through clear and convincing evidence that one of the exceptions set forth in Article 13(b) or 20 of the Convention applies.  42 U.S.C. § 11603 (e)(2).  It is Respondent's position that the Article 13(b) exception applies in this case, which provides that the Court is not bound to return a child where "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

The Eighth Circuit listed two types of grave risk that are appropriate under Article 13(b): sending a child to a 'zone of war, famine, or disease,' or in cases of serious abuse or neglect."  Silverman, 338 F.3d at 900 (citing Friedrichs v. Friedrichs, 78 F.3d 1060, 1069 (3d Cir. 1996) (finding that a grave risk exists "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence for whatever reason may be incapable or unwilling to give the child adequate protection."))

In Nunez-Escudero, the Eighth Circuit reversed and remanded the district court's order that had denied a petition for the return of the child based on the district court's finding that the Article 13(b) exception applied.  Before the district court, the mother provided general evidence that the father had physically,

sexually and verbally abused her.  Id.  The mother had also testified that she was

not allowed to leave the family home without her husband or father-in-law, that

her husband and his family objected to the mother nursing the baby, and that the

father refused to buy a car seat.  Id.  The district court found that the evidence

submitted established clear and convincing evidence there was a grave risk that

the child would be exposed to physical or psychological harm.

On appeal, the Eighth Circuit determined that "exceptions to the

Convention are to be narrowly construed."  Id. at 376.  By construing the

exceptions narrowly, the court noted that general evidence concerning abuse of

the mother is not sufficient to establish the Article 13(b) exception that return will

expose the child to harm.  Id. (citing Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir.

1995)).  The Article 13(b) inquiry must focus on "whether the child will face

immediate and substantial risk of an intolerable situation if [the child] is returned

to Mexico pending final determination of [the] parents' custody dispute."  The

court further cautioned that district courts must not consider who is the better

parent, whether the respondent has good reason to leave the family home, or

whether the respondent will suffer if the child is returned.  Id.  The court can,

however, "consider the environment in which the child will reside upon

returning to the home country." Id. And to ensure that the child is adequately protected, the court's inquiry must also "encompass some evaluation of the people and circumstances awaiting that child in the country of [the child's] habitual residence." Id. at 378.

Based on the evidence presented before it[1], and based on the applicable law set forth above, the Court finds that Respondent has failed to demonstrate, by clear and convincing evidence, that I.R.C. would be subjected to a grave risk of physical or psychological abuse or otherwise be subjected to an intolerable situation if the Petition were granted and I.R.C. returned to Mexico.

**IV.    ANALYSIS**

In support of her position that the Article 13(b) exception applies in this case, Respondent initially submitted an Affidavit in which she asserted that she was subjected to physical, verbal and emotional abuse by Petitioner, and that such abuse did not commence until after their marriage. (Affidavit of Stephanie

---

[1]The Court would note that Respondent called as a witness Jean Kubitshek. Ms. Kubitshek was the individual who supervised the visits between Respondent and I.R.C. Respondent intended to introduce testimony from Ms. Kubitshek as to Petitioner's controlling behavior as evidenced by the fact that on two occasions, Petitioner was late for supervised visitation as reported in her Supervised Visitation Notes. (Court Ex. 1.) The Court did not allow Ms. Kubitshek to testify, as it was clear from the Report that visitation was extended to compensate for Petitioner being late.

Colores ¶ 8.)  The abuse included the Petitioner's control of her social life, such as restricting her from leaving their gated community by herself and restricting visits from Respondent's family.  Respondent further asserted that Petitioner physically abused her by pushing her when she was pregnant and again shortly after she gave birth, and by grabbing her wrists hard enough to leave bruises.

With respect to Petitioner's treatment of their daughter I.R.C., Respondent asserted that Petitioner continually would butt his forehead up against I.R.C.'s and push her backward if he was not happy with something that I.R.C. was doing.  (Colores Aff. ¶ 8(g)(xii).)  Petitioner would often grab I.R.C.'s head and shake it back and forth quickly and would pull her hair.  (Id. ¶ 8(g)(xiii) and (xiv).)  Petitioner would also pour water in I.R.C.'s face while bathing her, and would not allow I.R.C. to touch any of his things.  (Id. ¶ 8(g)(xv) and (xvi).)  Respondent also asserted that Petitioner would berate her in front of I.R.C., and would slap, tap or caress her butt in front of I.R.C.  (Id. ¶ 8(g)(xix) and (xx).)

In describing another incident in which Petitioner physically abused Respondent, she asserted that she was able to break away from the Petitioner and get out of the house.  (Id. ¶ 8(g)(xxv).)  Respondent asserted that when she left the house, she believed that I.R.C. would be safe in her mother-in-law's care and

that her mother-in-law would protect I.R.C. from Petitioner.  (Id.)

At the evidentiary hearing, Respondent provided additional testimony to support her allegations of abuse.  As to physical abuse, Respondent testified that Petitioner would go into angry rages when Respondent did not do what he asked.  He would scream and shout, stand on his tiptoes and put his forehead against Respondent's and push down.  Respondent testified that when she was pregnant with I.R.C., Petitioner would push and shove her, and on one occasion, he almost ran over her with the car.  She further testified that one week after I.R.C.'s birth, the Petitioner pushed her down on the bed during an argument, causing the stitches from her episiotomy to tear.

Respondent testified that on Mother's Day in May 2009, Petitioner became angry when Respondent asked if he would help her with I.R.C. that day, since it was Mother's Day.  In his anger, Petitioner allegedly went into the guest bedroom and tore pillows and blankets off the bed, and threw the mattress aside. (Respondent Ex. 1.)   Respondent testified that approximately one month later, Petitioner grabbed and bruised her wrist.  (Respondent Ex. 2.)

With respect to her allegations that Petitioner inflicted psychological abuse, Respondent testified that Petitioner had complete control over their finances, that

Respondent was not listed as a beneficiary on Petitioner's life insurance, nor was she listed on the title of their home. Respondent testified that she was given little money to buy groceries and other necessities. She further testified that she had to get permission from Petitioner to leave the home and that Petitioner did not let her speak to neighbors or let the neighbors or friends hold I.R.C.. Respondent further testified that while pregnant, Petitioner refused to drive her to work. Instead, she was forced to take the school bus with the school children she taught. Prior to her becoming pregnant, however, Petitioner would drive Respondent to work.

Respondent also testified that Petitioner physically abused I.R.C. by either shaking her head forcefully six to ten times per month, head-butting her two to three times per month, or hitting her on the back with his fist. Respondent further testified that when Petitioner would shake I.R.C.'s head or head-butt her, I.R.C. did not cry. Respondent testified that Petitioner poured water over I.R.C.'s head while bathing her, and laughed at her when she became upset over the water in her face. Respondent had concerns that Petitioner may cause serious harm to I.R.C. from this behavior, but believed that I.R.C. had yet to suffer any type of brain injury. Respondent did admit that she had not taken I.R.C. to a

doctor in Mexico after any of the incidents of alleged abuse, nor did she take I.R.C. to a doctor since arriving in the United States in May 2010.

Respondent testified that I.R.C. would witness much of the abuse that Petitioner inflicted on Respondent. For example, Petitioner would routinely call Respondent names, tell her she was stupid, lazy or immature, in front of their daughter. Respondent believes that I.R.C. lost respect for her by witnessing such abuse. Respondent further testified that when Petitioner tore at the bed clothes in the guest bedroom, Respondent was standing in the door way, with I.R.C. in her arms. Respondent further testified that I.R.C. witnessed the Petitioner slapping the Respondent on the butt while she changed her clothing, and that she witnessed the Petitioner put his hands on Respondent's hips and "pump" behind her. Respondent testified that I.R.C. was also subjected to other lewd behavior, such as Petitioner grabbing his testicles while watching television.

Respondent's mother, Barbara Jo Gangl also testified that she witnessed Petitioner grab I.R.C.'s head and shake it forcefully and that he pulled her hair. She further testified that she heard arguments between Petitioner and Respondent while visiting them in Mexico, and that during such arguments Petitioner would repeatedly yell at Respondent.

Petitioner testified at the hearing that he is a medical doctor, and that he has his own medical practice in Mexico City. He lives in a gated community and his mother has been available to watch I.R.C. on occasions. He testified that he has a servant who takes care of the home and cooks meals. He denies ever abusing I.R.C. in any way, and believes that I.R.C. will be emotionally harmed if not returned to Mexico. Petitioner did concede that he had arguments with Respondent, but denied ever abusing her in any way.

The Court takes seriously any and all allegations of physical or psychological domestic abuse. For a number of reasons, however, the Court does not find credible Respondent's allegation that there is a grave risk that I.R.C. would be exposed physical or psychological harm or otherwise be placed in an intolerable situation if she were returned to Mexico.

First, the Court ordered an independent examination by a pediatric neurologist. In response to this Order, the parties arranged for Dr. Allan Ingenito at the Minneapolis Clinic of Neurology, Ltd. to examine I.R.C. (Respondent Ex. 4.) Dr. Ingenito obtained a medical history of I.R.C. from her parents and also conducted physical and neurological examinations. (Respondent Ex. 3.) Based on these examinations, Dr. Ingenito opined that I.R.C. had not suffered a

neurologic injury as a result of shaking based on the clinical history, I.R.C.'s normal neurological examination and her history of normal development progression following the alleged injury. (Id.)[2] Thus, the only independent medical evidence presented to this Court does not support Respondent's testimony.

In addition, the Court notes that Respondent has a bachelor's degree in elementary education with a minor in Spanish. She also received training in first aid while working for a school district in Minnesota, a part of which included specific protocols for a child who suffered a head injury. With such educational background and training, it is reasonable to assume that Respondent would likely recognize whether her daughter suffered any type of injury, including a brain injury, and the hands of Petitioner. Yet it was her testimony that she had no concerns that her daughter had suffered a brain injury at the hands of Petitioner. Respondent further testified that due to this lack of concern, she did not have I.R.C. examined by a physician, either in Mexico or upon her return to

---

[2]Dr. Ingenito did state that he could not definitively determine whether there had not been an injury in the past, because such determination would require an MRI scan. Such a scan, however, cannot be conducted until the child is approximately 4-5 years old. I.R.C. is currently twenty months.

the United States.  The Court finds that this lack of concern is inconsistent with her testimony that Petitioner forcefully shook I.R.C.'s head at least six to ten times per month, or that he head-butted her two to three times per month. Respondent also never reported the abuse to the authorities.  The fact that I.R.C. never cried after Petitioner shook her head or head-butted her is also inconsistent with the force allegedly used.

The Court further finds that the Respondent's ten day trip to Minnesota, without I.R.C., for her grandmother's funeral is inconsistent with her allegations that Petitioner repeatedly abused I.R.C. on a monthly basis before such trip took place.  Importantly, Respondent did not testify that she feared for I.R.C.'s safety while she attended the funeral.  She only testified that Petitioner would not allow I.R.C. to accompany Respondent to the funeral.  The Court further notes that in her affidavit testimony, Respondent asserted that she believed I.R.C. was safe when cared for by her mother-in-law.  (Colores Aff. ¶ 8 (g)(xxv).)

The Court further finds that Respondent's allegations of physical or psychological abuse against I.R.C. are not supported by I.R.C.'s medical history. Respondent testified that I.R.C. attended all her well-baby check-ups in Mexico, and that no doctor ever noticed that I.R.C. was suffering from any physical or

mental injury, or that I.R.C. was developmentally disabled.

Respondent argues that the applicable case law supports a finding that the Article 13(b) exception applies in this case.  In particular, Respondent argues that the Eleventh Circuit's decision in <u>Baran v. Beaty</u> supports her contention that the abuse alleged here is sufficient for the Court to find that I.R.C. will be exposed to physical or psychological harm or an otherwise intolerable situation if returned to Mexico.  The Court finds the <u>Baran</u> decision factually distinguishable, however.

In <u>Baran</u>, the district court heard evidence that the petitioner father, a native Australian, abused alcohol daily or near-daily, and that he was subject to drinking and gambling binges.  The court further found that he was marginally able to care for himself, he had no close family members that would have a meaningful involvement in the child's care and protection, and that he was emotionally unstable.  The court also found that he was physically and verbally abusive to wife, and told his wife that he did not want the child and that the child should have been aborted and that the child would die if he became an American, and that the wife could not blame him if something happened to the child.  Based on those facts, the district court denied the petition to return the

child to Australia pursuant to Article 13(b).

The facts in this case are clearly distinguishable from the facts at issue in Baran. Here, the Petitioner is a well-educated man who is financially independent and is able to take care of himself and I.R.C.. There is no evidence or allegation that he abuses alcohol or other illegal substances. Petitioner's family lives close by and he can provide for I.R.C.'s needs. There is no evidence that Petitioner ever spurned his daughter, or made explicit threats to her safety. Petitioner in fact testified that he loves his daughter very much, and that he wants the very best for her, and that he would do anything to protect her.

Respondent also cites the Court to Rodriguez v. Rodriguez, 33 F. Supp.2d 456 (D. Md. 1999) in support of her request that the Court deny the Petition. Clearly, this case is also factually distinguishable from Rodriguez. In Rodriguez, the court was presented with evidence that the petitioner father had physically and verbally abused his son and his wife over a number of years. Such abuse included severe beatings, belittling statements, choking, holding a pillow over the wife's face, and stomping. There are no same or similar allegations in this case.

Similarly, in Walsh v. Walsh, the evidence before the court was that

the petitioner husband, an Irish citizen, had severely beaten his wife over the

years, even when she was pregnant, and on occasion in front of the children.  In

addition, the petitioner husband beat his son from another marriage.  There was

also evidence that the petitioner husband fled the country when charged with

threatening to kill a neighbor, and refused to return when a warrant was issued.

Further, there was evidence that the petitioner husband violated Irish court

orders that he stay away from the marital home.  221 F.3d 204, 208-11 (1st Cir.

2000).  The First Circuit Court of Appeals held that such evidence was sufficient

to establish a grave risk that the children would be exposed to physical or

psychological harm if returned to their father.  <u>Id.</u> at 221.

In this case, there is no evidence of severe physical abuse, or evidence that

Petitioner threatened others or has a history of violating court orders.  Rather, the

evidence presented demonstrated that Petitioner and Respondent did have

arguments during which Petitioner raised his voice and engaged in limited

physical contact with Respondent or where he directed his rage to walls or

bedroom furniture.  Respondent characterized such physical contact as abuse,

while Petitioner characterized such contact as physical restraints to ensure that

Respondent did not cause harm to herself.  Despite the differing

characterizations, it is clear that Petitioner has not been accused of subjecting Respondent to severe physical abuse of the type described in <u>Walsh</u>, <u>Rodriguez</u> or <u>Baran</u>.

There is also evidence that I.R.C. may have been exposed to Petitioner's outbursts or was handled at times somewhat roughly by Petitioner. Petitioner denies he ever intentionally caused his daughter harm, and described his contacts with I.R.C. as playful - such as tousling her hair and growling at her like a lion. The fact that I.R.C. never cried during such interactions is consistent with Petitioner's testimony that he was being playful. Again, despite the parties' differing characterizations of Petitioner's conduct towards I.R.C., the fact remains that no evidence was submitted to the Court which demonstrates that I.R.C. suffered any physical or psychological harm at the hands of Petitioner.

Based on the evidence presented, and the applicable law, the Court finds that the Respondent has failed to meet her burden of demonstrating, by clear and convincing evidence, that there is a grave risk that I.R.C. will be exposed to physical or psychological harm, or otherwise be placed in an intolerable situation, if she is returned to Mexico.

Finally, Petitioner requests an award of attorney's fees and costs pursuant

42 U.S.C. § 11607(3), which provides:

> Any court ordering the return of a child pursuant to an action brought
> under section 11603 of this title shall order the respondent to pay necessary
> expenses incurred by or on behalf of the petitioner, including court costs,
> legal fees, foster home or other care during the course of proceedings in the
> action, and transportation costs related to the return of the child, unless the
> respondent establishes that such order would be clearly inappropriate.

Respondent requests that the Court deny Petitioner's request for attorney's

fees and costs on the basis that she earns a small salary at her current job. Based

on Respondent's current financial condition, the Court finds that an award of

attorney's fees and costs is not appropriate in this case.

IT IS HEREBY ORDERED that the Petition to Return the Child to Habitual

Residence, Mexico [Doc. No. 1] is GRANTED. Petitioner is hereby awarded

physical custody of I.R.C. for the purpose of returning I.R.C. to her habitual

residence in Mexico. Petitioner's request for attorney's fees and costs is

DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: September 14, 2010

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court